## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| DANIELLE WASHINGTON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:13-CV-1041-JRG-RSP |
| | § | |
| TRINITY INDUSTRIES, INC., et al., | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Before the Court is Defendant Trinity Industries, Inc. and Defendant Trinity Highway Products, LLC. (collectively "Trinity" or "Defendants")'s Motion to Transfer Venue to the Northern District of Texas ("NDTX") (Dkt. No. 14, filed January 23, 2015, briefing completed March 11, 2015.) Having reviewed the record, the Court **DENIES** Trinity's motion for the reasons set forth below and transfers the case to the Middle District of North Carolina ("MDNC").

## BACKGROUND

This is a suit concerning an auto accident that occurred in North Carolina in the vicinity of Greensboro, North Carolina, involving a guardrail that was allegedly manufactured by Defendants.

## APPLICABLE LAW

28 U.S.C § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Volkswagen of America, Inc.*

*(Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008). District courts have "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the Court must weigh the relative public and private factors of the current venue against the transferee venue. *Id.* In making such a convenience determination, the Court considers several private and public interest factors. *Id.* "Factors relating to the parties' private interests include '[1]] relative ease of access to sources of proof; [2]] availability of compulsory process for attendance of unwilling, and [3]] the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and [4]] all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 n.6 (2013) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6, (1981); *Volkswagen II*, 545 F.3d at 315. "Public-interest factors may include '[1]] the administrative difficulties flowing from court congestion; [2]] the local interest in having localized controversies decided at home; [and] [3]] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Atl. Marine*, 134 S. Ct. at 581 n.6 (citing *Piper Aircraft*, 454 U.S. at 241 n.6); *Volkswagen I*, 371 F.3d at 203. Other public factors are: 4) the familiarity of the forum with the law that will govern the case; and 5) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203; Although the private and

public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

In the Fifth Circuit, the plaintiff's choice of venue has not been considered a separate factor in this analysis. *Volkswagen II*, 545 F.3d at 314-15. However, "[t]he Court must also give some weight to the plaintiffs' choice of forum." *Atl. Marine*, 134 S. Ct. at n.6 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). "Plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), [and the Supreme Court has] termed their selection the 'plaintiff's venue privilege.'" *Atl. Marine*, 134 S. Ct. at 581 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964).) In the Fifth Circuit, the "venue privilege" has been seen as contributing to the defendant's elevated burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315.

"The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." *Van Dusen*, 376 U.S. at 622 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622). Section 1404(a) requires this discretionary "individualized, case-by-case consideration of convenience and fairness." *Van Dusen*, 376 U.S. at 622.

**ANALYSIS**

**A.      Proper Venue**

The Middle District of North Carolina—the site of the accident—is a proper venue.  This action could have been properly initiated there.

**B.      Private Interest Factors**

**1.      Relative Ease of Access to Sources of Proof**

The accident in question occurred "occurred, 'on Interstate 40 West near Exit 212B,' somewhere in the Greensboro, North Carolina area.  (Mot. at 1.; Dkt. No. 1 ¶¶ 1, 7.)  The Plaintiff allegedly relies in Greensboro, North Carolina.  (*Id.*)  Trinity's principal place of business, its employees, and some of its manufacturing are located in NTDX.  (Mot. at 3.)  However, the tangible evidence and investigating law enforcement officers connected with this accident are obviously located in North Carolina.

The Court finds that this factor weighs in favor of the Middle District of North Carolina.

**2.      Cost of Attendance for Willing Witnesses**

On balance, the Court finds that this factor weighs in favor of transfer.

**3.      Availability of Compulsory Process to Secure the Attendance of Witnesses**

This factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order.  *See In re Volkswagen II*, 545 F.3d at 316.  Third-party subpoenas are governed by Fed. R. Civ. P. 45, which, as recently amended in 2013, provides the presiding court with nationwide subpoena power to order third-party witnesses to attend deposition, so long as the deposition is to take place within 100 miles of the witness's residence or regular place of business.  Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A).

"Presumably, there may be some witnesses to the accident who reside in North Carolina where the accident occurred." (Mot. at 7.) The evidence before the Court suggests that non-party witnesses are substantially more likely to be found in and around the Middle District of North Carolina.

The Court finds that this factor weighs in favor of transfer to the Middle District of North Carolina.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

The Court finds that this factor is neutral.

## C. Public Interest Factors

### 1. Administrative Difficulties Flowing From Court Congestion

According to federal case management statistics for the 12 month period ending on December 31, 2013 (this case was filed in November of 2013), the Northern District of Texas has a median time to termination of 6.3 months and a median time to trial of 25.9 months, and the Middle District of North Carolina has a median time to termination of 11.4 months and a median time to trial of 30 months.

The Court finds that this factor weighs in favor of the Northern District of Texas.

### 2. Local Interest in Having Localized Interests Decided at Home

The Parties agree that the accident occurred in the Middle District of North Carolina. The scene of the accident and the related participants are there. Other than the Northern District of Texas being Defendants' domicile they have no specific connection the accident giving rise to this case. The Court finds that this factor weighs in favor of transfer to the Middle District of North Carolina.

### 3-4. Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

These factors are neutral.

## CONCLUSION

Having reviewed the record, the Court **DENIES** Trinity's Motion (Dkt. No. 14.) for the reasons set forth above. Further, applying the spirit of *In re Volkswagen* and its progeny the Courts concludes that the Middle District of North Carolina is the clearly more convenient venue; more so than EDTX and the NDTX and transfers the case to the Middle District of North Carolina. The MDNC is where the automobile accident at the heart of this case occurred. It is where the evidence and witnesses, such as the investigating law enforcement officers are located. The communities within the MDNC have a vested interest in seeing occurrences within their own immediate area being disposed of and such an interest warrants the sacrifices mandated by jury service. The only connection between this case and the NDTX is that the defendant corporations reside there. That pales in comparison to the location where the events actually transpired, where the tangible evidence resides and where the potential third-party witnesses reside and subject to the MDNC's absolute subpoena power. Consequently the Court **ORDERS** and **DIRECTS** the Clerk to transfer this case to the MDNC.

## ADDENDUM

The Court notes that on May 15, 2015, while it had decided and was drafting this Order and Opinion, the Court received electronic notice that Defendants had filed an Application for a Writ of Mandamus with the Fifth Circuit seeking to compel this court to grant this Motion. Defendants' Application for Writ also seeks a ruling on an Emergency Motion to Stay All Proceedings and Deadlines and Request for Expedited Briefing (Dkt. No. 29) that was filed at 4:38 p.m. on Wednesday, May 6, 2015, less than seven business days ago. The Applicants for

mandamus (Defendants here) say they are being denied the benefits of a transfer and the stay because this Court has either ignored their motion or intentionally elected to disregard it. Neither scenario is true.

Trinity's Application for a Writ accurately sets forth that the Motion to Transfer only became fully briefed and ripe for consideration by this court on March 11, 2015, roughly two months ago. Trinity fails to consider that this court has other pending cases and motions besides their own. In fact, this court routinely carries a weighed case load more than twice that of the average district court in this circuit. Pursuant to the Circuit's own reports for the twelve month period ending December 31, 2014, this court had terminated 1236 civil cases and had 854 active civil cases on its docket--many with pending motions to transfer as well. This compares, during the same period, with the heaviest individual civil case loads (not counting MDL cases) in this court's sister districts as follows: In the EDLA – 320 cases, in the MDLA – 221 cases, in the WDLA – 276 cases, in the SDMS 296, in the NDMS – 181, in the NDTX - 550 cases; in the SDTX - 369; and in the WDTX - 554 civil cases. Since the first of this year there have been well over 500 motions filed with this Court, several of them styled as emergency matters. For Trinity to complain (by way of the extraordinary remedy of mandamus) when its motion has only been briefed and ripe for two months is woefully premature. For Trinity to effectively seek an "end-run" around the District Court by seeking a "first instance" transfer analysis and decision from the Circuit Court visa vie its mandamus application is clearly unjustifiable.

This Court has often heard it said, from the most learned members of its bar, that lawsuits are a race for credibility, first with the court and ultimately with the jury. If that maxim is correct, as this Court believes it to be, then Trinity has stumbled in its race for credibility, in the

misplaced hope of transforming the circuit court into its trial court of choice, through the premature use of a historically exceptional remedy.

Going forward, this Court recommends a modicum of patience coupled with a fair and realistic appreciation of the workloads of our district courts.

**So ORDERED and SIGNED this 15th day of May, 2015.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE